```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION


PATRICIA A. PORTER,             *
                                *
     Plaintiff,                 *
                                *
vs.                             *   CIVIL ACTION 11-00350-B
                                *
MICHAEL J. ASTRUE, Commissioner *
of Social Security,             *
                                *
     Defendant.                 *
```

## ORDER

Plaintiff Patricia A. Porter ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et. seq. On April 24, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c). Oral argument was held on April 24, 2012. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

I.  **Procedural History**

Plaintiff protectively filed an application for supplemental security income on August 9, 2007. (Tr. 83-89, 151). Plaintiff alleges that she has been disabled since October 1, 2006, due to cervical degenerative disc disease and left carpal tunnel syndrome. (Id. at 35). Plaintiff's application was denied at the initial stage. (Id. at 35-41). She filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 45-53). On March 3, 2010, Administrative Law Judge Frederick McGrath held an administrative hearing, by video, which was attended by Plaintiff and her attorney. (Id. at 23-34). On March 31, 2010, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 5-22). Plaintiff's request for review was denied by the Appeals Council ("AC") on May 9, 2011. (Id. at 1-4, 77-82).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

II. **Issues on Appeal**

    A.   Whether the ALJ's final decision was supported by substantial evidence?

    B.   Whether the ALJ failed to assign proper weight to the opinion of Plaintiff's treating psychologist?

    C.    Whether the ALJ improperly evaluated Plaintiff's treating psychologist's psychological capacity evaluation in terms of the onset date of Plaintiff's pain disorder?

    D.    Whether the ALJ erred in finding that Plaintiff's complaints of pain are not severe under SSR 96-3p?

    E.    Whether the ALJ's statement of Plaintiff's subjective complaints of pain and credibility complied with the requirements of SSR 96-7p?

    F.    Whether the ALJ erred by improperly evaluating the evidence or by failing to order a consultative examination?

## III. Factual Background

Plaintiff was born on April 12, 1959, and was fifty (50) years of age at the time of the administrative hearing. (Tr. 18, 35). She has a 7th grade education and past relevant work ("PRW") as a storm relief worker and fast food cook. (Id. at 108, 133, 221).

At the administrative hearing,[1] Plaintiff testified that she has pain in her hands, neck, shoulder, back, legs and hips and that x-rays have confirmed that she has degenerative disk disease. (Id. at 32). Plaintiff also testified that she spends the day reading and watching television, and that she has to often get up and move around. (Id. at 33).

---

[1] Interestingly, the transcript from the administrative hearing reflects that while the ALJ questioned Plaintiff's representative extensively, he did not pose a single question to Plaintiff. Plaintiff was, however, questioned by her representative.

**IV. Analysis**

    **A.  Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131

---

    [2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

(11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

**B.  Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. § 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. § 404.1520, 416.920.[3]

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove
(Continued)

In the case sub judice, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and that she has the severe impairments of cervical degenerative disc disease, myalgia and myositis, cervical radiculitis, polyarthralgia, carpal tunnel syndrome, hypertension, arthritis, pain disorder, and personality disorder.  (Tr. 10).  The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform unskilled light work, that Plaintiff cannot climb ladders, ropes, and scaffolds, that Plaintiff can perform occasional crouching and crawling, that Plaintiff is limited to occasional gross manipulation with the left hand and that Plaintiff can perform

---

at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

no work with the general public. The ALJ also found that Plaintiff cannot perform work around unprotected heights and dangerous machinery. (Id. at 12).

The ALJ next determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible. (Id. at 16). The ALJ concluded that Plaintiff's RFC precludes her from performing any of her past work and that considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy. (Id. at 17-18). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 18-19).

The relevant evidence of record shows that Plaintiff was treated at Tri-County Medical Center Castleberry Clinic from June 1997 through July 2006.[4] (Id. at 177-201). On July 12, 2006, Plaintiff reported back pain and pain when urinating. She was prescribed gentamycin, cipro, and urogesic blue. (Id. at 178).

---

[4] While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date of October 1, 2006, only those records relevant to the issues before the Court are highlighted.

Plaintiff was treated by Dr. Stanley Barnes at Barnes Family Medical Associates from October 1997 through February 16, 2009. (Id. at 215-220, 247-52). During a February 19, 2007 visit, Plaintiff presented with a history of neck and back pain. The notes indicated that Plaintiff had previously been treated by Dr. Fleet.[5] Plaintiff's chief complaint was numbness in her shoulders and arms, especially on the right side. Dr. Barnes opined that Plaintiff's complaints did not sound like carpal tunnel, and after examining Plaintiff, he provided her a sample of Lyrica. (Id. at 215).

Plaintiff was seen by Dr. Barnes on August 7, 2007. The treatment notes reflect that Plaintiff reported that she previously performed relief work following Hurricane Katrina, but had to stop because of neck and back pain. Plaintiff also reported that an orthopedist had prescribed Tramadol for her, and that it helped to some extent. On examination, Plaintiff's

---

[5] Dr. Fleet ordered an MRI of Plaintiff's cervical and lumbar spine on March 4, 2004. The imaging results of the cervical spine showed moderate broad based central disc protrusion which impinges on the cord but does not appear to flatten it at C4-5. Moderate central disc protrusion impinging on the cord and possibly producing slight flattening of the cord was seen at C5-6. No foraminal stenosis and no intrinsic abnormality were seen within the cord. (Id. at 218). Imaging results of Plaintiff's lumbar spine revealed some dessication of the disc, moderate broad based disc bulge at L3-4 and L4-5, producing mild spinal stenosis but with adequate space for the cauda equina. Moderate degenerative changes involving the facet joints at L3-4 and L4-5 were also noted. (Id. at 219).

chest was clear, and her heart had regular rate and rhythm. Plaintiff's extremities showed evidence of generalized arthritis. Dr. Barnes prescribed Ultram 60 mg and provided her with more samples of Lyrica 75 mg. (Id. at 216).

Dr. Barnes' January 23, 2008 treatment notes reflect that Plaintiff was being seen following her trip to the emergency room due to back pain and urinary tract infection. Plaintiff reported that while in the emergency room, she was given a shot of mepergen, phenergen, and Demerol. She also received Medrol dosepak and Tylenol #4, which helped some. Dr. Barnes noted that Plaintiff's x-rays showed some degenerative changes and opined that they were probably just "old wear and tear more than anything." He also noted that Plaintiff reported that she was not taking her blood pressure medications because when she checks it at home, her blood pressure is acceptable. (Id. at 247).

During Plaintiff's March 31, 2008 office visit, she reported chest wall pain whenever she takes a deep breath, tiredness, and lack of energy. Dr. Barnes noted that Plaintiff should stop smoking. On exam, Plaintiff's chest was clear but occasionally rhonchi appreciated in the posterior basis. Her heart had regular rate and rhythm. Plaintiff's extremities showed myalgias and arthralgias. Dr. Barnes' treatment notes dated February 16, 2009 reflect that Plaintiff reported a cough

and congestion, that Plaintiff was still smoking, that Plaintiff was only taking 1/2 of her blood pressure medication, and that she reported that she was working at a local casino. (Id. at 252).

The record also contains medical records from the Alabama Orthopaedic Clinic for April and May 2007. (Id. at 206-14). On April 11, 2007, Plaintiff was seen by Dr. Tim Revels with complaints of neck pain and pain in both upper extremities, that was lasting for months and was increasing in severity. On exam, Plaintiff had normal motor intact function in both upper extremities. Numbness, tingling, and burning in both upper extremities and hands was found, more in the left hand than the right. Plaintiff had notable radiculopathy in the C5 distribution. Dr. Revels diagnosed cervical degenerative disc disease, cervical radiculopathy, neck pain, and possible peripheral compression neuropathy. (Id. at 207).

Dr. Revels referred Plaintiff to Dr. Charles Hall for nerve studies. On May 3, 2007, Plaintiff underwent the nerve studies. The electrodiagnostic impression of the studies was: abnormal study, with mild median focal neuropathy at the left wrist, no evidence of medial focal neuropathy at the right wrist, no evidence of ulnar neuropathy bilaterally and no EMG abnormalities in the left upper extremity. No EMG of the right

upper extremity was performed at Plaintiff's request. (Id. at 208-12).

Dr. Revel's treatment notes dated May 9, 2007 reflect that the nerve studies showed mild left carpal tunnel syndrome, not on the right, and that no other nerve deformity was found. Dr. Revels noted that he examined an MRI from three years prior, which showed some 5-6 cord intrusion next to the spinal cord, which was more than at 4-5. His physical exam of Plaintiff found evidence of lower extremity hyperreflexia. The upper extremities did not show hyperreflexia but were positive for Hoffman sign in both hands.[6] Plaintiff was provided a trial of Lyrica. (Id. at 206).

The record reflects that on November 5, 2007, Plaintiff was examined by Dr. Stephen M. West, at the request of the Agency. (Id. at 221-23). Plaintiff reported constant severe pain in her neck, arms, back, hips, knees and both hands. She also reported her muscles hurt all the time. Dr. West noted that Plaintiff continues to smoke. On exam, Plaintiff's blood pressure was

---

[6] Hoffman's sign is a neurological sign in the hand which is an indicator of problems in the spinal cord. It is associated with a loss of grip. The test for Hoffman's sign involves tapping the nail on the third or forth finger. A positive Hoffman's is the involuntary flexing of the end of the thumb and index finger. Normally, there should be no reflex response. See http://www.mult-sclerosis.org/Hoffmanssign.html(last visited September 28, 2012).

160/100, cranial nerves 2-12 were grossly intact without focal, motor, or sensory deficit. Plaintiff's grip strength was 5/5 bilaterally. Flexion and extension of both wrists and elbows were 5/5. Flexion, extension, abduction, and adduction of both shoulders and hips were noted as 5/5. Plantar flexion and dorsflexion bilaterally were 5/5. Plaintiff's straight leg raise test was negative. Plaintiff was able to reach her ankles, and heel toe walk, and do a full squat while holding onto the exam table. Plaintiff had full flexion and extension of her cervical spine with lateral rotation left and right to 70 degrees and full range of motion of all her joints. Dr. West assessed myalgia and myositis, polyarthralgia, and cervical radiculitis. He noted that Plaintiff had a normal exam, and opined that he did not see "any disabling factors or anything that would prevent her from working." (Id. at 222).

Agency medical consultant Patricia Easley completed a physical RFC assessment on November 20, 2007, wherein she indicated that Plaintiff has cervical degenerative disc disease, cervical radiculopathy, and left carpal tunnel. She opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull for a limited amount of time in her upper extremities. Ms. Easley determined that Plaintiff could occasionally climb ladders,

ropes, and scaffolds, crouch, and crawl, and frequently climb ramps and stairs, balance, stoop, and kneel. She also found that Plaintiff could occasionally handle with her left hand, but otherwise, Plaintiff's manipulative limitations were unlimited, and that Plaintiff should avoid concentrated exposure to hazards. No communicative or visual limitations were noted. (Id. at 224-31).

Plaintiff presented to the emergency room at Evergreen Medical Center on December 28, 2007, with complaints of abdominal, back and leg pain. An MRI of Plaintiff's lumbosacral spine showed mild narrowing of the L3-4 and 4-5 disc spaces. Plaintiff's vertebrae were otherwise normally aligned, and the padicles were intact. She was diagnosed with mild degenerative disc disease. (Id. at 254-55).

Plaintiff was treated at Rigdorf Chiropractic Center at least fourteen times between October 23, 2008 and November 26, 2008. (Id. at 233-44). Plaintiff reported numbness in her hands and fingertips, tightness in her left hand, pain in her back, neck, shoulders, and arms, lack of sleep, shortness of breath, and high blood pressure. The notes reflect that Plaintiff has difficulty sitting, standing, walking, and bending. (Id. at 234-37).

Plaintiff underwent a psychological evaluation on February 25, 2010 by Robert DeFrancisco, PhD. (Id. at 258-62). Plaintiff

reported headaches, numbness in her hands, tightness in her shoulders and neck, and lower and upper back pain. Plaintiff further reported that when she is able, she cooks her meals and does household chores. (Id. at 258-9).

Plaintiff was administered the Brief Pain Inventory Short Form and the Minnesota Multiphasic Personality Inventory ("MMPI"). On the Pain Inventory, Plaintiff reported her pain within the last twenty-four hours as an eight on a scale of one to ten, and indicated that her pain affects her ability to move around and her interaction with other people. Dr. DeFrancisco noted that Plaintiff reported that she cannot sleep or enjoy life because of her pain, and he observed that the Pain Inventory suggested that Plaintiff experienced chronic pain syndrome. On the MMPI, Plaintiff's Fk ratio and other validity scores were normal. Dr. DeFrancisco opined that she has no coping skills, and that she appears in significant distress with depression, as well as added concerns and dramatization. He noted Plaintiff has concentration and focusing issues. (Id. at 259).

Dr. DeFrancisco diagnosed pain disorder associated with psychological factors and personality disorder with histrionic and passive aggressive tendencies. He opined that Plaintiff's pain seems bonafide and genuine. (Id. at 260). He further opined that Plaintiff has marked restrictions in activities of

14

daily living, in maintaining social functioning, in understanding, carrying out, and remembering instructions in a work setting, and in responding appropriately to supervision in a work setting. He also opined that Plaintiff would have frequent deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner, and she would experience marked episodes of deterioration or decompensation in work like settings. (Id. at 261).

### 1. Whether the ALJ's final decision is supported by substantial evidence?

In her brief, Plaintiff alleges that the ALJ's final decision is not supported by substantial evidence, and then, in a less than organized fashion, she makes various arguments regarding alleged shortcomings in the ALJ's decision. Because the undersigned finds that the ALJ's step five analysis was flawed and not supported by substantial evidence, the Court will not address the various other arguments in Plaintiff's brief.[7]

---

[7] Because the Court determines that the decision of the Commissioner should be reversed and remanded for further proceedings based on Plaintiff's first claim, there is no need for the Court to address Plaintiff's other claims. See Robinson v. Massanari, 176 F. Supp. 2d 1278, 1280 and n.2 (S.D. Ala. 2001); Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985)("Because the 'misuse of the expert testimony alone warrants reversal' we do not consider the appellant's other claims.") (citations omitted).
(Continued)

As noted *supra*, at step four of the sequential evaluation process, the ALJ determined that Plaintiff cannot return to her past relevant work.  He then moved on to step five.  At this step, the burden shifted to the ALJ to show that there are a significant number of jobs in the national economy that Plaintiff can perform.

In undertaking the fifth step analysis, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform.  In using the grids, the ALJ inputs the claimant's exertion level, skill level, age, education and experience into a formula, which establishes whether the claimant is disabled.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit has made clear however that "[e]xclusive reliance on the grids is not appropriate *either* when the claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basis work skills."  Id. at 1242 (emphasis in original, citations omitted).  In those instances, the preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE.  Perry v. Astrue, 280 Fed. Appx.

887, 895, 2008 U.S. Appx. LEXIS 12285 (11th Cir. 2008); Jones v. Apfel, 190 F. 3d 1224, 1229 (11th Cir. 1999).

In D'Anna v. Comm'r of Soc. Sec., 2009 U.S. Dist. LEXIS 121243 (M.D. Fla. Dec. 29, 2009), the plaintiff argued that the ALJ erred in relying on the grids because he found that the plaintiff was limited to simple, routine work, and that the plaintiff should not have close proximity to coworkers or the general public.  The Court held that because it was implicit in the ALJ's finding that the claimant had difficulty interacting with people, the ALJ was required to retain a VE to offer an opinion about the vocational effect of the limitation.  See also England v. Astrue, 2008 U.S. Dist. LEXIS 27531 (M.D. Fla. March 28, 2008)(where the ALJ concluded that plaintiff could not have significant contact with other people or perform high stress work, court held that exclusive reliance on the grids was not proper.).

In the case *sub judice*, the ALJ found that Plaintiff has the RFC to perform light unskilled work, and that she is limited to occasional gross manipulation with the left hand, and no work with the general public.  (Id. at 12).  The ALJ went on to find that if Plaintiff had the RFC to perform the full range of light work, considering her age, education and work experience, Rules 202.11 and 202.18 of the grids would direct a finding of "not disabled".  (Id. at 18).  The ALJ further found that the

17

"additional limitations have little or no effect on the occupational base of unskilled light work"; and that the grids directed a finding of " not disabled." (Id.).

The undersigned finds that the ALJ's finding that Plaintiff's nonexertional limitation has "little or no effect" on her occupational base for unskilled work is not supported by substantial evidence. Implicit in his finding that Plaintiff should have "no contact with the general public" is an acknowledgement that the claimant has difficulty interacting with people and that it has more than a minimal effect on the vocational base of light work. Thus, the undersigned finds that the ALJ erred in not obtaining the testimony of a VE. On remand, the Commissioner should obtain VE testimony to determine whether there has been an erosion of the occupational base, and whether there are jobs in significant numbers in the national economy that Plaintiff can perform given her functional limitations. See Phillips, 357 F.3d at 1241-42 (providing that exclusive reliance on the grids is inappropriate when claimant has non-exertional impairments that significantly limit basic work skills).

**V. Conclusion**

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social

18

Security, denying Plaintiff's claim for supplemental security income, be **REVERSED** and **REMANDED**.

**DONE** this **28th** day of **September, 2012.**

                                              /s/ SONJA F. BIVINS
                                     **UNITED STATES MAGISTRATE JUDGE**